UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| ALYEK CORTES,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JOHNSON & JOHNSON, INC., a New Jersey Corporation and NEUTROGENA CORPORATION, a California corporation.<br><br>　　　　Defendants. | Case No.: _____<br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

**COMES NOW** Plaintiff, Alyek Cortes, by and through his undersigned counsel, hereby sues Defendants, Johnson & Johnson, Inc., and Neutrogena Corporation. In support thereof, Plaintiff states:

**THE PARTIES, JURISDICTION & VENUE**

1.   Plaintiff Alyek Cortes is a Florida citizen, resident, and domiciliary.

2.   Defendant Johnson & Johnson, Inc., ("J&J") is a New Jersey corporation with its principal place of business located in New Brunswick, New Jersey.

3.   Defendant Neutrogena Corporation ("Neutrogena") is a California corporation with its principal place of business located in Los Angeles, California.

1

4. This Court has subject matter jurisdiction pursuant to 28 U.S1332(a)(1) because Plaintiff and J&J are citizens of different states and the amount in controversy exceeds $75,000.00.

5. This Court is authorized to exercise personal jurisdiction over J&J pursuant to the Florida Long-Arm Statute, Fla. Stat. §§ 48.193(1)(a)(1), (1)(a)(2), and (1)(a)(6), because the claims stated herein arise out of J&J:

    a. Operating, conducting, engaging in, or carrying on a business or business venture in Florida or having an office or agency in Florida;

    b. Committing a tortious act within Florida; or

    c. Causing injury to persons or property within Florida arising out of an act or omission committed outside Florida where, at or about the time of the injury, either (i) J&J was engaged in solicitation or service activities within Florida, or (ii) products, materials, or things processed, serviced, or manufactured by J&J anywhere were used or consumed in Florida in the ordinary course of commerce, trade, or use.

6. At all times herein relevant, J&J was regularly doing business within the state of Florida and sold products within the state of Florida that it marketed, inspected, serviced, and sold.

7. J&J regularly solicits business or engages in other persistent courses of conduct and derives substantial revenue from goods used or consumed or services rendered to persons in and from the state of Florida.

8. J&J expects and should reasonably expect its acts to have consequences in Florida and derives substantial revenue from commerce with citizens and residents of the state of Florida, as well as from interstate commerce.

9. J&J regularly transacts business with citizens and residents of the state of Florida and contracts to supply its goods and services to the state of Florida.

10. By seeking distribution of their products in Florida, J&J has purposefully availed itself of doing business in Florida in a meaningful way, J&J has sufficient minimum contacts to justify being subject to the jurisdiction of a Florida court.

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because Alyek and Neutrogena are citizens of different states and the amount in controversy exceeds $75,000.00.

12. This Court is authorized to exercise personal jurisdiction over Neutrogena pursuant to the Florida Long-Arm Statute, Fla. Stat. §§ 48.193(1)(a)(1), (1)(a)(2), and (1)(a)(6), because the claims stated herein arise out of Neutrogena:

   a. Operating, conducting, engaging in, or carrying on a business or business venture in Florida or having an office or agency in Florida;

   b. Committing a tortious act within Florida; or

   c. Causing injury to persons or property within Florida arising out of an act or omission committed outside Florida where, at or about the time of the injury, either (i) Neutrogena was engaged in solicitation or service activities within Florida, or (ii) products, materials, or things processed, serviced, or manufactured by Neutrogena anywhere were used or consumed in Florida in the ordinary course of commerce, trade, or use.

13. At all times herein relevant, Neutrogena was regularly doing business within the state of Florida and sold products within the state of Florida that it marketed, inspected, serviced, and sold.

14. Neutrogena regularly solicits business or engages in other persistent courses of conduct and derives substantial revenue from goods used or consumed or services rendered to persons in and from the state of Florida.

15. Neutrogena expects and should reasonably expect its acts to have consequences in Florida and derives substantial revenue from commerce with citizens and residents of the state of Florida, as well as from interstate commerce.

16. Neutrogena regularly transacts business with citizens and residents of the state of Florida and contracts to supply its goods and services to the state of Florida.

17. By seeking distribution of their products in Florida, Neutrogena has purposefully availed itself of doing business in Florida in a meaningful way, Neutrogena has sufficient minimum contacts to justify being subject to the jurisdiction of a Florida court.

18. Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claims stated herein occurred in Orlando, Florida.

### **FACTS**

19. Plaintiff brings this cause of action for a serious and life-altering physical disease sustained by 20-year-old ALYEK CORTES (hereinafter "Alyek") while using certain Neutrogena sunscreen products containing benzene, and using it as intended and in a manner reasonably foreseeable to Neutrogena in and around Lakeland,

Florida. As a result, Alyek was diagnosed and received treatment for Acute Myeloid Leukemia (AML) on or about July 8, 2020, in Orlando, Florida.

20. Alyek was born in Ponce, Puerto Rico on December 30, 2002. Growing up in Florida, his parents regularly purchased and used various Neutrogena Sunscreen Products including, but not limited to, Neutrogena Beach Defense Aerosol Sunscreen and Neutrogena Ultra Sheer Aerosol Sunscreen. They used these products regularly and typically on a weekly basis near their home, at the pool, at the beach, and in daily outside activities living in Florida from approximately June 2006 until approximately July 2020.

21. Alyek was diagnosed with Acute Myeloid Leukemia (AML), subtype FLT3, at Nemours Children's Hospital in Orlando, Florida when he was only 17 years old. He suffered multiple chemotherapy treatments and their side effects. A stem cell transplant was performed on December 2, 2020, at John Hopkins Hospital. He continues to receive follow-up care.

22. Alyek was exposed to a known carcinogen, benzene, contained in Neutrogena's Sunscreen Products. The case arises due to the negligence of Neutrogena in the development, manufacturing, packaging, labeling, distributing, and marketing of certain Sunscreen Products specified below. Several of Neutrogena's sunscreen products (identified below), have been independently tested and shown to be adulterated with benzene, a known human carcinogen. The presence of benzene in Neutrogena's Sunscreen Products was not disclosed on the product labeling.

23. Neutrogena designed, manufactured, marketed, distributed, and sold Neutrogena Sunscreen.

24. J&J designed, manufactured, marketed, distributed, and sold Neutrogena Sunscreen.

25. Plaintiff purchased the Neutrogena sunscreen products from Walgreens, CVS, and other local retailers in and around the Lakeland, Florida area.

## BENZENE IN SUNSCREEN

26. Benzene is used primarily as a solvent in the chemical and pharmaceutical industries, as a starting material and intermediate in the synthesis of numerous chemicals, and in gasoline. The major United States source of benzene is petroleum. The health hazards of benzene have been recognized for over one hundred years. According to the National Toxicology Program ("NTP"), benzene is "known to be a human carcinogen based on sufficient evidence of carcinogenicity from studies in humans." The National Toxicology Program (NTP) is formed from parts of several different US government agencies, including the National Institutes of Health (NIH), the Centers for Disease Control and Prevention (CDC), and the Food and Drug Administration (FDA).

27. Exposure to benzene is a known cause of Acute Myeloid Leukemia (AML). The International Agency for Research on Cancer (IARC) is part of the World Health Organization (WHO). One of its goals is to identify causes of cancer. IARC classifies benzene as "carcinogenic to humans," based on sufficient evidence that benzene causes AML.

28. The U.S. Environmental Protection Agency (EPA) maintains the Integrated Risk Information System (IRIS), an electronic database that contains information on human health effects from exposure to various substances in the environment. The EPA classifies benzene as a known human carcinogen.

29. In 2020, Valisure LLC and ValisureRX LLC ("Valisure"), an analytical pharmacy, performed tests on a variety of Neutrogena's Sunscreen Products. Specifically, Valisure tested numerous lots of Neutrogena's spray and lotion Sunscreen Products. As a result of this testing, Valisure discovered that certain Sunscreen Products contain benzene, with values ranging from less than 0.1 parts per million ("ppm"), 0.10 ppm to 2 ppm, and more than 2 ppm, and even above 6 ppm. Benzene is not listed as an active or inactive ingredient on any of the labels of Neutrogena's Sunscreen Products. Moreover, all of the Sunscreen Products are marketed and advertised in an identical manner — as "Sunscreen."

30. The National Institute for Occupational Safety and Health ("NIOSH") recommends protective equipment be worn by workers expecting to be exposed to benzene at concentrations of 0.1 ppm and defines "skin absorption" as an exposure route.

31. On May 24, 2021, Valisure filed a citizen petition with the Food and Drug Administration ("FDA") requesting that the agency to recall all batches of Neutrogena's sunscreen products tested which (as tested) contained 0.1 ppm or more of benzene, on the basis that they are adulterated under Section 501 of the FDCA (21 U.S.C. § 351) and misbranded under Section 502 of the FDCA (21 U.S.C. § 352).

Neutrogena Beach Defense Aerosol Sunscreen, Neutrogena Cool Dry Sport Aerosol Sunscreen, Neutrogena Invisible Daily Defense Aerosol Sunscreen, Neutrogena Ultra Sheer Aerosol Sunscreen, Aerosol Sunscreen, among others all tested positive for containing benzene.

32. On July 14, 2021, Neutrogena recalled the following products: Neutrogena Beach Defense Aerosol Sunscreen, Neutrogena Cool Dry Sport Aerosol Sunscreen, Neutrogena Invisible Daily Defense Aerosol Sunscreen, and Neutrogena Ultra Sheer Aerosol Sunscreen.

33. Benzene, a known human carcinogen, is not on the FDA's list of acceptable active or inactive ingredients for Sunscreen Products. Nor is benzene identified as an active or inactive ingredient on any of the Neutrogena Sunscreen Products. Nevertheless, Neutrogena proclaims in their advertising that "Neutrogena maintains that the sunscreen ingredients we use are safe and effective . . .," which is a false and misleading statement.

34. Neutrogena sunscreens were designed, manufactured, assembled, produced, and distributed in a defective, unmerchantable, and unsuitable condition, by Neutrogena which caused Plaintiff's injuries.

35. The Plaintiff's injuries were actually and proximately caused by the Neutrogena sunscreens' defective and unreasonably dangerous condition.

36. Specifically, the Neutrogena sunscreens suffered from several design defects and were made using substandard and inferior-quality materials and processes.

## COUNT I—STRICT LIABILITY
### (Against J&J)

37.  Plaintiff Alyek Cortes re-alleges and incorporates paragraphs 1 through 36 of this Complaint as if fully stated herein.

38.  J&J is responsible for testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting the Subject sunscreen products.

39.  The Subject sunscreen products were in a defective and unreasonably dangerous condition when they left J&J's final possession, custody, and control.

40.  The Subject sunscreen products are defective in their design, manufacture, and warning because they do not contain adequate warnings or any specific reference that their products contain benzene. These actions were under the ultimate control and supervision of J&J.

41.  The Subject sunscreen products failed to perform as safely as expected by Plaintiff M.F. when used in the intended or reasonably foreseeable manner.

42.  The Subject sunscreen products' defective and unreasonably dangerous condition actually and proximately caused injury and damage to Plaintiff.

**WHEREFORE**, Plaintiff Alyek Cortes, demands judgment for this Count against J&J in a fair and reasonable amount to be determined by the jury for all injuries and damages he sustained, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain, and suffering, lost

wages, punitive damages, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT II—NEGLIGENCE
### (Against J&J)

43. Plaintiff Alyek Cortes re-alleges and incorporates paragraphs 1 through 36 of this Complaint as if fully stated herein.

44. J&J is responsible for testing, designing, manufacturing, marketing, selling, distributing, and promoting the Subject sunscreen products.

45. The Subject sunscreen products were in a defective and unreasonably dangerous condition when they left J&J's final possession, custody, and control.

46. J&J has a duty to properly test, design, manufacture, market, sell, distribute, and promote the Subject sunscreen products and to ensure the Subject sunscreen products were not in a defective and unreasonably dangerous condition when the Subject sunscreen products left J&J's final possession, custody, and control.

47. J&J owed a duty to provide adequate warnings, instructions, and information with the Subject sunscreen products.

48. J&J owed a duty to inspect, test, and assure the quality of the Subject sunscreen products before the Subject sunscreen products left J&J's final possession, custody, and control.

49. J&J breached the above duties.

50. J&J's breaches of the above duties actually and proximately caused injury and damage to Plaintiff.

**WHEREFORE**, Plaintiff Alyek Cortes, demands judgment for this Count against J&J in a fair and reasonable amount to be determined by the jury for all injuries and damages he sustained, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain, and suffering, lost wages, punitive damages, costs, and interest, and for any such further relief as the Court deems appropriate.

### COUNT III—BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Against J&J)

51. Plaintiff Alyek Cortes re-alleges and incorporates paragraphs 1 through 36 of this Complaint as if fully stated herein.

52. Plaintiff purchased Subject sunscreen products, containing benzene, and ultimately contracted AML which caused him to suffer a life-altering physical disease.

53. At the time of Plaintiff's use of the Subject sunscreen products, J&J was in the business of designing, manufacturing, marketing, distributing, and selling Neutrogena Sunscreen.

54. Prior to the time that the Subject sunscreen was used by Plaintiff, J&J impliedly warranted to Plaintiff and other consumers that the Subject sunscreen was of merchantable quality and was safe and fit for the use for which it was intended.

55. The Subject sunscreen was neither safe for its intended use nor of merchantable quality, as warranted by J&J when put to its intended use, and it caused severe injuries to Plaintiff.

56. The average consumer, like Plaintiff, would not reasonably anticipate the dangerous and harmful condition of the Subject sunscreen, or the physical disease caused by reasonable and foreseeable use.

57. Plaintiff reasonably relied on the skill, judgment, and implied warranty of J&J in using the Subject sunscreen.

58. The benzene used in the Subject sunscreen was a substantial factor in causing Plaintiff's severe and life-altering injuries.

59. By designing, manufacturing, marketing, distributing, and selling the Subject sunscreen, J&J breached the implied warranty of merchantability and the implied warranty of fitness, causing the Plaintiff to suffer severe pain and emotional distress, be subjected to ongoing side effects as a result of the cancer treatments, and incur expenses for doctors, hospitals, nurses, pharmaceuticals, and other reasonably required and medically necessary supplies and services.

60. As a result of the aforementioned breaches of implied warranties by J&J, Plaintiff suffered injuries and damages as alleged herein.

**WHEREFORE**, Plaintiff Alyek Cortes, demands judgment for this Count against J&J in a fair and reasonable amount to be determined by the jury for all injuries and damages he sustained, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain, and suffering, lost wages, punitive damages, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT IV— STRICT LIABILITY
### (Against Neutrogena)

61. Plaintiff Alyek Cortes re-alleges and incorporates paragraphs 1 through 36 of this Complaint as if fully stated herein.

62. Neutrogena is responsible for testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting the Subject sunscreen products.

63. The Subject sunscreen products were in a defective and unreasonably dangerous condition when they left Neutrogena's final possession, custody, and control.

64. The Subject sunscreen products are defective in their design, manufacture, and warning because they do not contain adequate warnings or any specific reference that their products contain benzene. These actions were under the ultimate control and supervision of Neutrogena.

65. The Subject sunscreen products failed to perform as safely as expected by Plaintiff Alyek Cortes when used in the intended or reasonably foreseeable manner.

66. The Subject sunscreen products' defective and unreasonably dangerous condition actually and proximately caused injury and damage to Alyek Cortes.

**WHEREFORE**, Plaintiff Alyek Cortes, demands judgment for this Count against Neutrogena in a fair and reasonable amount to be determined by the jury for all injuries and damages he sustained, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages,

non-economic damages, mental anguish, emotional distress, pain, and suffering, lost wages, punitive damages, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT V—NEGLIGENCE
### (Against Neutrogena)

67. Plaintiff Alyek Cortes re-alleges and incorporates paragraphs 1 through 36 of this Complaint as if fully stated herein.

68. Neutrogena is responsible for testing, designing, manufacturing, marketing, selling, distributing, and promoting the Subject sunscreen products.

69. The Subject sunscreen products were in a defective and unreasonably dangerous condition when they left Neutrogena's final possession, custody, and control.

70. Neutrogena has a duty to properly test, design, manufacture, market, sell, distribute, and promote the Subject sunscreen products and to ensure the Subject sunscreen products were not in a defective and unreasonably dangerous condition when the Subject sunscreen products left Neutrogena's final possession, custody, and control.

71. Neutrogena owed a duty to provide adequate warnings, instructions, and information with the Subject sunscreen products.

72. Neutrogena owed a duty to inspect, test, and assure the quality of the Subject sunscreen products before the Subject sunscreen products left Neutrogena's final possession, custody, and control.

73. Neutrogena breached the above duties.

74. Neutrogena's breaches of the above duties actually and proximately caused injury and damage to Alyek Cortes.

**WHEREFORE**, Plaintiff Alyek Cortes, demands judgment for this Count against Neutrogena in a fair and reasonable amount to be determined by the jury for all injuries and damages he sustained, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain, and suffering, lost wages, punitive damages, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT VI—BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Against Neutrogena)

75. Plaintiff Alyek Cortes re-alleges and incorporates paragraphs 1 through 36 of this Complaint as if fully stated herein.

76. Plaintiff purchased Subject sunscreen products, containing benzene, and ultimately contracted AML which caused him to suffer a life-altering physical disease.

77. At the time of Plaintiff's use of the Subject sunscreen products, Neutrogena was in the business of designing, manufacturing, marketing, distributing, and selling Neutrogena Sunscreen.

78. Prior to the time that the Subject sunscreen was used by Plaintiff, Neutrogena impliedly warranted to Plaintiff and other consumers that the Subject

sunscreen was of merchantable quality and was safe and fit for the use for which it was intended.

79. The Subject sunscreen was neither safe for its intended use nor of merchantable quality, as warranted by Neutrogena when put to its intended use, and it caused severe injuries to Plaintiff.

80. The average consumer, like Plaintiff, would not reasonably anticipate the dangerous and harmful condition of the Subject sunscreen, or the physical disease caused by reasonable and foreseeable use.

81. Plaintiff reasonably relied on the skill, judgment, and implied warranty of Neutrogena Corporation in using the Subject sunscreen.

82. The benzene used in the Subject sunscreen was a substantial factor in causing Plaintiff's severe and life-altering injuries.

83. By designing, manufacturing, marketing, distributing, and selling the Subject sunscreen, Neutrogena breached the implied warranty of merchantability and the implied warranty of fitness, causing the Plaintiff to suffer severe pain and emotional distress, be subjected to ongoing side effects as a result of the cancer treatments, and incur expenses for doctors, hospitals, nurses, pharmaceuticals, and other reasonably required and medically necessary supplies and services.

84. As a result of the aforementioned breaches of implied warranties by Neutrogena Corporation, Plaintiff suffered injuries and damages as alleged herein.

**WHEREFORE**, Plaintiff Alyek Cortes, demands judgment for this Count against Neutrogena in a fair and reasonable amount to be determined by the jury for

all injuries and damages he sustained, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain, and suffering, lost wages, punitive damages, costs, and interest, and for any such further relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff, Alyek Cortes, hereby demands a trial by jury on all issues so triable.

Dated: May 31, 2023

Respectfully submitted,

/s/ *Joshua D. Moore*
**T. MICHAEL MORGAN, ESQ.**
Florida Bar No.: 062229
**JOSHUA D. MOORE, ESQ.**
Florida Bar No.: 0041680
**MORGAN & MORGAN, P.A.**
20 North Orange Avenue, Suite 1600
Orlando, FL 32801
Telephone: (407) 420-1414
Email: joshmoore@forthepeople.com
Secondary Email :
mmorgan@forthepeople.com
Tertiary Email :
akelseyflowers@forthepeople.com
*Counsel for Plaintiff*